**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

------------------------------------------------------- :
RICHARD ELDERKIN and            :      CIVIL ACTION NO.  3:02CV1474(MRK)
LUIS MAIA                                :
                                              :
     Plaintiffs,                       :
v.                                           :
                                              :
PATRICK BONA, RICHARD GUISTI, SR., :
EDWARD C. DEMERS and ROBERT  :
DEVINE                                    :
                                              :
     Defendants.                     :      APRIL 12, 2004
_____ :

<u>**LOCAL RULE 56 STATEMENT IN SUPPORT OF**</u>
<u>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

     Pursuant to Rule 56 of the Local Rules of Civil Procedure, the defendants Patrick Bona,

Richard Guisti, Sr. and Edward Demers respectfully offer the following Statement of Undisputed

Material Facts in support of their Motion for Summary Judgment.

     1.     At all times relevant to the complaint in this action, defendant Patrick Bona was the

Chief of the Middlebury Police Department, Richard Guisti, Sr. was a Lieutenant, and Edward

Demers was an Officer, all acting in their capacity as members of said Department.  Complaint, ¶4;

Answer, ¶4.

     2.     At all times relevant to the complaint in this action, defendant Robert Devine was a

private citizen residing in Naugatuck, Connecticut.  Complaint, ¶4, Answer, ¶4.

     3.     On September 22, 1999, Lt. Guisti and Officer Demers signed an Affidavit and

Application for Search and Seizure Warrant (the "Warrant") concerning a yellow ranch style home

359407

located at the corner of Umberfield Road and Route 63 in Middlebury, Connecticut, owned by

Richard Elderkin (the "Property").  Exhibit 1 (Affidavit of Richard Guisti, Sr. of 4/9/04, ¶3 [the

"Guisti Aff."]); Exhibit 2 (Affidavit of Edward Demers of 4/9/04, ¶3 [the "Demers Aff."]).

4.      The facts and circumstances contained in the Warrant were stated from personal

knowledge and observations as well as information received from other police officers acting in their

official capacity and from official police reports and statements made from prudent and credible

witnesses.  Warrant, ¶2.

5.      In particular, on or about September 20, 1999, the Middlebury Police Department

received information from another law enforcement agency that Mr. Elderkin possessed a case of live

pineapple style grenades at the Property. Id., ¶5.

6.      This information was based upon a complaint made by Robert Devine.  Id., ¶6.

7.      On September 21, 1999, Middlebury Officer Ronald Pruchnicki, Jr., met with Mr.

Devine and obtained a sworn written statement claiming that Mr. Elderkin had "live grenades" in the

basement of the Property.  Id., ¶7.

8.      A genuine copy of Officer Pruchnicki's Report, dated September 21, 1999, is attached

as Exhibit A to Lt. Guisti's Affidavit.  Id., ¶8.

9.      A genuine copy of the Statement of Robert Devine, dated September 21, 1999, is

attached as Exhibit B to Lt. Guisti's Affidavit.  Id., ¶9.

10.     The Warrant was presented to a Judge of the Connecticut Superior Court at GA4,

Judge Iannotti, for his consideration.  Id., ¶10.

359407

11.     On September 22, 1999, Judge Iannotti considered the Application and signed the Warrant finding that probable cause existed to enter into and search the Property for hand grenades, hand grenade facsimiles, explosives and military explosives.  Id., ¶11.

12.     A true and genuine copy of the Warrant, a six-page document, is attached as Exhibit A to Officer Demers' Affidavit.  Demers Aff., ¶6.

12.     On September 22, 1999, at approximately 6:00 p.m., Mr. Elderkin was stopped on the street by members of a task force consisting primarily of Waterbury Police Officers, who were assisting with the execution of the Warrant.  Guisti Aff., ¶12; Demers Aff., ¶7.

13.     When Lt. Guisti arrived at the scene where Mr. Elderkin was stopped, Mr. Elderkin was already out of the vehicle in which he had been riding as a passenger.  Guisti Aff., ¶¶13-14.

14.     Lt. Guisti, Officer Demers, and Chief Bona did not participate in stopping Mr. Elderkin.  Guisti Aff., ¶¶13-14, 18; Demers Aff., ¶9.

15.     The driver of the vehicle in which Mr. Elderkin had been riding was then allowed to drive from the scene.  Guisti Aff., ¶15.

16.     Mr. Elderkin was then transported to the Property.  Guisti Aff., ¶16; Demers Aff., ¶8.

17.     On September 22, 1999, after Mr. Elderkin was brought to the Property, the Warrant was executed with the assistance of members of the task force, including members of the Waterbury Police Department, and the basement of the Property was searched.  No hand grenades were found.  Guisti Aff., ¶17; Demers Aff., ¶10.

18.     Middlebury Police Chief Patrick Bona was not on duty and was not present when Mr. Elderkin was stopped on September 22, 1999.  Guisti Aff., ¶18.

19.    Chief Bona did stop by the Property while the search was being conducted.  <u>Id.</u>

20.    After the search, Mr. Elkerkin gave a voluntary statement to Officer Demers at the Middlebury Police Department, after being notified of his rights.  Guisti Aff., ¶19; Demers Aff., ¶15.

21.    After Mr. Elderkin signed his statement, he was allowed to leave.  Guisti Aff., ¶20; Demers Aff., ¶16.

22.    Mr. Elderkin was not charged with any crime.  Guisti Aff., ¶21; Demers Aff., ¶16.

23.    Mr. Elderkin did not complain of any injuries while he was in the presence of Lt. Guisti or Officer Demers.  Guisti Aff., ¶22; Demers Aff., ¶18.

24.    None of Mr. Elderkin's property was damaged.  Guisti Aff., ¶23.

25.    None of Mr. Elderkin's property was seized.  Guisti Aff., ¶23.

26.    Before the incident that is the subject of this complaint occurred, Mr. Elderkin was acquainted with Mr. Devine.  Exhibit 3 (Deposition of Richard Elderkin of 7/10/03 ["Elderkin Dep."]) at 6-7.

27.    Mr. Elderkin had in the past purchased military-type items from Mr. Devine.  <u>Id.</u>

28.    In the spring of 1999, Mr. Devine had visited Mr. Elderkin's Property.  <u>Id.</u>, at 7.

29.    When Mr. Devine visited the Property, Mr. Elderkin told him that he had live grenades in a box.  <u>Id.</u>, at 7, 16.

30.    When Mr. Devine visited the Property, Mr. Elderkin had stored there thousands of rounds of various types of ammunition.  <u>Id.</u>, at 15.

31.    When Mr. Devine visited the Property, Mr. Elderkin also possessed books that probably covered booby traps.  <u>Id.</u>, at 24.

32.    When Mr. Elderkin was stopped by the Police on September 22, 1999, he was riding as a passenger in a car driven by Luis Maia.  <u>Id.</u>, at 46.

33.    Mr. Elderkin cannot identify which officers ordered him to get out of the vehicle.  <u>Id.</u>, at 46-48.

34.    Mr. Elderkin exited the vehicle on his own volition.  <u>Id.</u>, at 47 ("And I had my hands extended and I got out."); <u>see</u> <u>also</u> p. 53.

35.    Mr. Elderkin was ordered to the ground when he got out of the vehicle.  <u>Id.</u>, at 48.

36.    Mr. Elderkin cannot identify which officer it is who he claims pushed him to the ground.  <u>Id.</u>, at 48, 57-58 (Q. "Which officer did this to you?" A. "I am not sure").

37.    No officer punched Mr. Elderkin.  <u>Id.</u>, at 53.

38.    No officer kicked Mr. Elderkin.  <u>Id.</u>

39.    Mr. Elderkin claims that he was forced to the ground and that his left knee hit the grass.  <u>Id.</u>, at 55.

40.    When Mr. Elderkin gave his statement to Officer Demers at the Middlebury Police Department on September 22, 1999, he did not tell him that he hurt his knee.  <u>Id.</u>, at 89.

41.    Mr. Elderkin did not tell the Middlebury Police that he was injured.  <u>Id.</u>

42.    Mr. Elderkin did not seek any medical treatment for his alleged injuries between September 23, 1999 and October 9, 2001.  <u>Id.</u>, at 151.

43.    The Police did not take any property or weapons from Mr. Elderkin's house.  <u>Id.</u>, at 93.

44.     Plaintiff Luis Maia was asked to exit his motor vehicle, a Honda Civic station wagon. Exhibit 3 (Deposition of Luis Maia of 7/10/03 ["Maia Dep."]) at 16, 18.

45.     Mr. Maia was not handcuffed.  Id., at 17.

46.     Mr. Maia was not punched, kicked or hit.  Id.

47.     No officer laid hands on Mr. Maia.  Id.

48.     After a quick pat down search, Mr. Maia was allowed to leave.  Id.

49.     The officers opened the doors and looked inside the car, but did not open the hatchback.  Id., at 19.

50.     Mr. Maia was not arrested and he was allowed to leave within a matter of minutes. Id., at 20.

51.     Mr. Maia can recognize Chief Bona and rules him out as definitely not being one of the officers who allegedly brought Mr. Elderkin to the ground.  Id., at 25.

52.     Mr. Maia has not sought any counseling as a result of the alleged emotional distress he is claiming from this incident.  Id., at 31.

                                RESPECTFULLY SUBMITTED,
                                DEFENDANTS,
                                PATRICK BONA, RICHARD GUISTI, SR.,
                                and EDWARD C. DEMERS


                                By:_____
                                    JAMES N. TALLBERG, ESQ.
                                    Fed. Bar No. ct17849
                                    Updike, Kelly & Spellacy, P.C.
                                    One State Street, P.O. Box 231277
                                    Hartford, CT 06123-1277
                                    Tel. (860) 548-2600

**<u>CERTIFICATION</u>**

I hereby certify that a copy of the foregoing has been sent via U.S. Mail, postage prepaid, to

the following counsel of record, this _____ day of April 2004:

John R. Williams, Esq.
William & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

Robert Devine
69 Morris Street
Naugatuck, CT 06770


By:_____
    JAMES N. TALLBERG, ESQ.
    Updike, Kelly & Spellacy, P.C.

359407