UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD J. ELDERKIN<br>and LUIS MAIA | : | |
| | : | |
| VS. | : | NO. 3:02CV1474(MRK) |
| | : | |
| PATRICK BONA,<br>RICHARD GUISTI, SR.,<br>EDWARD C. DEMERS and<br>ROBERT DEVINE | :<br>:<br>:<br>: | MAY 1, 2004 |

**BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

  The plaintiffs were the victims of a warrantless arrest. The plaintiff Maia was the victim of a warrantless search of his person and vehicle. The plaintiff Elderkin was the victim of a warrantless search of his person and of an unreasonable, although warranted, search of his property. The defendants Bona, Guisti and Demers all participated in these activities. Bona was the Chief of the Middlebury Police Department at the time and Guisti was a high-ranking official in that department. They admit some of these things, and deny others, but know that the plaintiffs have given sworn deposition testimony asserting the above. Yet they move for summary judgment.

  "The standards governing summary judgment are well-settled. Summary

1

judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c); *see also* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." <u>Giannullo v. City of New York</u>, 322 F.3d 139, 140-41 (2nd Cir. 2003), *quoting* <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158, 160 (1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a

matter of law even when it does not have the ultimate burden of persuasion at trial."  Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury.  In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996).  Rather, the court must resolve any ambiguities and draw all inferences against the moving party.  Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991).  The evidence of the party against whom summary judgment is sought must be believed.  Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994).  The court must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is

improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution. R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party,

summary judgment is improper.'"  Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997).  Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

  The defendants, moving for summary judgment, have candidly submitted to the court complete transcripts of the deposition testimony of both plaintiffs.  As summarized in the plaintiffs' Local Rule 56 Statement, submitted herewith, these two sworn testimonies easily defeat the defendants' motion.  Defendant Devine, who is a civilian and has not moved for summary judgment, stated in the written statement upon which the defendants relied in obtaining their search warrant that the plaintiff Elderkin had shown him a box of live pineapple type grenades in the plaintiff's basement.  That was a false statement.  (Plaintiff Elderkin's deposition transcript, pp. 16-17)  There never were any live grenades in the basement of plaintiff Elderkin.  (Id. 17)   He never has possessed live grenades.  (Id. 40) Plaintiff Elderkin has special permits from ATF for possession of Class 3 weapons, that is, fully automatic weapons.  (Id. 19)  Plaintiff Elderkin also has an ATF permit for possession of silenced weapons.  (Id. 20-21)

  However, the defendants had no reason to know that these allegations were lies and, therefore, properly sought and obtained a search warrant.  That search warrant, however, was highly limited.  It did not authorize them to search the plaintiff Elderkin, nor did it authorize them to arrest him or detain him.  It

authorized only the search of the house owned by plaintiff Elderkin on Straits Turnpike, in Middlebury.  (See search warrant, submitted by defendants in support of the instant motion.)  Despite the clear limitations of that warrant, however, the defendants went directly for the plaintiff Elderkin.

On September 22, 1999, the plaintiff Elderkin had gone to the Big E with friends.  Upon returning around sunset, he met with plaintiff Maia and the two of them went to the Straits Turnpike property.  (Elderkin deposition transcript, pp. 43-44)  The plaintiffs drove away from the Straits Turnpike property heading back to the plaintiff Elderkin's residence.  They were pulled over by the defendants, with police lights flashing, on a public road.  The defendants were screaming at them: "Hands on dash, hands on dash!"  (Id. 45)

The plaintiffs, sitting in the automobile, were approached by someone in full body armor holding an M-16 rifle with a laser beam on it pointing at the head of plaintiff Elderkin from a distance of only 2 or 3 feet.  (Id. 46)  The police, in Middlebury police vehicles, blocked in the plaintiffs' vehicle.  (Ibid.)  The plaintiffs were removed from the vehicle at gunpoint.  (Id. 47)  Someone hollered: "Kneel!"  When plaintiff Elderkin attempted to turn to see who was thus shouting at him, he felt someone pulling his arms and pushing and twisting him and slamming him to the ground.  He was pushed to the ground and hit his knee.  The police just dragged him and pushed him and shoved him to the ground.  (Id. 48)

Defendant Guisti was present and was the only officer present not wearing a SWAT-type uniform. (Id. 49) Defendant Demers also was present, and later transported plaintiff Elderkin in custody from the scene of this arrest to his house. (Id. 50)

When he was ordered at gunpoint to kneel, plaintiff Elderkin thought he was going to be executed. (Id. 51) The officers pulled and shoved plaintiff Elderkin and stepped on him. (Id. 52-53) They slammed him to the ground. (Id. 56) When he was on the ground, plaintiff Elderkin was handcuffed. (Ibid.) Guisti, who clearly was in charge of these actions, then stated to plaintiff Elderkin that he had a search warrant for the basement of his house. (Id. 59)

The location where the plaintiff Elderkin was stopped and arrested was approximately 1.5 miles away from the Straits Turnpike property for which the search warrant had been issued. (Id. 70) Plaintiff Elderkin was driven back to the Straits Turnpike property. When he arrived, defendant Bona was waiting there along with many other police officers. (Id. 72)

The search of the Straits Turnpike property lasted approximately three hours. (Id. 81) Throughout that search, the plaintiff Elderkin was held prisoner and periodically interrogated by defendant Bona, who was shouting and jumping up and down and flailing his arms and screaming and demanding answers to his questions. (Ibid.) Before the search had ended, defendant Bona ordered the

plaintiff Elderkin to be taken in custody to police headquarters for further interrogation. (Id. 85)  Defendant Bona was angry at the plaintiff because the plaintiff had nothing illegal in his house.  Defendant Bona hollered at the plaintiff Elderkin:  "We spent all this time and money and you have nothing!"  (Id. 86)

The handcuffs were not removed from the plaintiff Elderkin until after he was inside police headquarters.  (Id. 87) He was in handcuffs continuously for approximately 2.5 hours.  (Id. 88)

The defendants did not seize anything from the property of plaintiff Elderkin because he had nothing illegal.  (Id. 91) He was not charged with any crime.  (Id. 93) He was so terrified and confused throughout these events that he was afraid he might soil himself.  (Id. 111)

The police inflicted serious damage on the property of plaintiff Elderkin during their search of his basement.  Things were tipped over and thrown around.  A container of bolts and nuts, and trays of similar items, were thrown around.  A big aluminum box had been put on top of his BSA bicycle.  The defendants had thrown and dumped property all over.  (Id. 113-14)

The plaintiff Elderkin's chief physical complaint after the arrest and search was that he was so upset that his stomach and nerves were bad.  He sought medical treatment.  In the process, he also explained to his physician that he had incurred an injury to his knee when he was thrown to the ground, and he has

been treated for that as well. (Id. 126) As a result of the actions of the defendants, the plaintiff Elderkin was so upset that he could not sleep. (Id. 135) The plaintiff Elderkin suffers nightmares as a result of the actions of the defendants, and sometimes wakes up screaming. (Id. 136)

Plaintiff Maia observed two different police officers stepping on plaintiff Elderkin's back while he was held prisoner on the ground outside Maia's vehicle. (Maia deposition transcript, p. 5) Two of the police who pushed plaintiff Elderkin to the ground were wearing Middlebury police uniforms. (Id. 22-23) Plaintiff Maia had been driving down the road with plaintiff Elderkin in the passenger seat when the police cars with flashing lights pulled him over. The officers shouted at him to put his hands on the dashboard. (Id. 9) One of the officers stood a couple of feet away from the car pointing a gun at plaintiff Maia. (Id. 10, 15-16) Plaintiff Maia was ordered out of his car at gunpoint and ordered to put his hands on top of his car while his person was searched. (Id. 16) The police searched Maia's car while holding him prisoner. (Id. 17-19) The search included the car's glove compartment. The police even opened and searched the interior of a flashlight found inside the glove compartment. (Id. 19) The police left the interior of plaintiff Maia's car in disarray. They did not put away any of the property they disrupted during the search. (Ibid.)

The Middlebury police then ordered plaintiff Maia to go straight to his

house and told him that if he was seen anywhere around the town he would be arrested. (Id. 20-21)   Defendant Bona was present at the scene where plaintiff Maia's car was stopped and both plaintiffs were searched. (Id. 23-25)

Plaintiff Maia also suffered emotional distress, including loss of sleep, as a result of the defendants' actions. (Id. 26, 29-30)

All warrantless searches are, by definition, unreasonable and violate the Fourth Amendment absent an exception to this general rule.  The burden of proving the existence of a valid exception to this general rule rests on the party claiming the benefit of that exception – in this case, the defendants.  Coolidge v. New Hampshire, 403 U.S. 443 (1971); Stoner v. California, 376 U.S. 483 (1964); United States v. Jeffers, 342 U.S. 48 (1951).   "[T]he general requirement that a search warrant be obtained is not lightly to be dispensed with, and 'the burden is on those seeking [an] exemption [from the requirement] to show the need for it....'"  Chimel v. California, 395 U.S. 752, 762 (1969).  Quoting United States v. Jeffers, 342 U.S. 48, 51 (1951).

The defendants claim the warrantless seizure of the plaintiffs, the search of their persons, and the search of Maia's car, all were lawful because incidental to the execution of the warrant for Elderkin's house located a considerable distance away.  This is nonsense and clearly prohibited by the Fourth Amendment at least as long ago as Chimel v. California, 395 U.S. 752 (1969).

10

This is not a circumstance in which the plaintiffs happened to be upon the premises at the time the search warrant was executed. Rather, they were far away from it and were stopped, taken into custody, searched, and plaintiff Elderkin then transported to the search site. The defendants have not been able to provide the court with any authority that even comes close to supporting these activities, and there does not appear to be any. See generally, *e.g.*, United States v. Stanley, 597 F.2d 866 (4th Cir. 1979); United States v. Green, 324 F.3d 375 (5th Cir. 2003); United States v. Johnson, 18 F.3d 293 (5th Cir. 1994); United States v. Delgadillo-Velasquez, 856 F.2d 1292 (9th Cir. 1988).

This court has upheld a jury verdict in favor of a citizen arrested and transported by police officers to the location for which they had a valid search warrant. Pappas v. New Haven Police Department, 278 F. Supp. 2d 296 (D. Conn. 2003). The present case cannot be distinguished from Pappas.

The manner in which the defendants carried out the search of plaintiff Elderkin's house was unreasonable because of the unnecessarily destructive manner in which the search was conducted. The defendants have not attempted to address this issue. Behaving in an unreasonable manner while executing a valid search warrant is actionable as a Fourth Amendment violation. Bergquist v. County of Cochise, 806 F.2d 1364, 1368-69 (9th Cir. 1986) ("Officers' conduct in executing a search warrant is always subject to judicial review as to its

11

reasonableness.  Dalia v. United States, 441 U.S. 238, 258 (1979); Tarpley v. Greene, 684 F.2d 1, 8 (D.C. Cir. 1982).  Officers may face Section 1983 liability for executing a warrant in an unreasonable manner.").  See Duncan v. Barnes, 592 F.2d 1336, 1338 (5th Cir. 1979) ("From the moment of entry until the moment of departure, appellees' conduct was subject to scrutiny for reasonableness under the fourth amendment.")

"The whole course of conduct of an officer in making an arrest or other seizure -- including verbal exchanges with a subject -- must be evaluated for Fourth Amendment reasonableness in light of the totality of the circumstances." Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1194 (10th Cir. 2001). It is an unreasonable execution of a search warrant to depart the searched premises leaving cigar ashes in the bed and a gun in the dog's water bowl. Lawmaster v. Ward, 125 F.3d 1341 (10th Cir. 1997).  It is unreasonable, and a Fourth Amendment violation, to "callously and needlessly ransack[] [the subject] home and destroy[] property."  Mena v. City of Simi Valley, 226 F.3d 1031, 1041 (9th Cir. 2000).  Although sometimes destruction of property is an inevitable concomitant of a properly-executed search, as where a warrant authorizes looking behind wallboards or whatever, "unnecessarily destructive behavior, beyond that necessary to execute a warrant effectively, violates the Fourth Amendment."  Liston v. County of Riverside, 120 F.3d 965, 979 (9th Cir. 1997).

12

Michigan v. Summers, 452 U.S. 692, 705 (1981), held that it was reasonable for officers conducting a search of a building to hold the occupants without probable cause while the search was conducted. But when the officers seek to use that brief, temporary detention as a means to conduct interrogation of those people thus detained, subjecting them to questioning while detained or as a condition of being released, that is an unreasonable search and seizure which violates the Fourth Amendment. Ganwich v. Knapp, 319 F.3d 1115, 1120-23 (9th Cir. 2003). See also Florida v. Royer, 460 U.S. 491 (1983), where a reasonable *Terry* stop became unreasonable when the person stopped was taken to a small police room for further questioning. Furthermore, the reasonable brief detention of occupants during a search also will become unreasonable if it is unnecessarily prolonged for any reason at all, or for no reason, and if the persons detained are unnecessarily prevented from making telephone calls during the period of detention. Ganwich, *supra*, at 1123.

The manner in which both plaintiffs – but particularly plaintiff Elderkin – were treated when taken into custody and removed at gunpoint from plaintiff Maia's vehicle is readily compared to McKelvie v. Cooper, 190 F.3d 58 (2d Cir. 1999), where the Second Circuit reversed the grant of summary judgment to the defendants in a Fourth Amendment case. There, McKelvie had been held at gunpoint, face to the floor, because he happened to be a patron in a bar when

police executed a valid search warrant there. What happened in this case was worse than that, because these plaintiffs were not even present at the premises being searched.

The fact that the plaintiffs both were held at gunpoint also is relevant, since there was no warrant and no probable cause to arrest either of them. In Black v. Stephens, 662 F.2d 181 (3d Cir. 1981), cert. denied, 455 U.S. 1008 (1982), the Third Circuit found "more than enough evidence" to support a jury's finding of a substantive due process violation when a police officer unjustifiably pointed his loaded service revolver at a motorist whom he did not arrest. 662 F.2d at 188. "[A]n official's threat to employ deadly force for no legitimate reason rises to a substantive due process violation." Hawkins v. Holloway, 316 F.3d 777, 787 (8th Cir. 2003) (sheriff pointed loaded firearm at a deputy). The mere pointing of weapons at the plaintiffs under the circumstances of this case in which there was no basis to arrest them at all, or to detain them, constitutes an unreasonable search and seizure and an unreasonable application of force, all in violation of the Fourth Amendment.

There is some dispute about whether the mere act of pointing a gun at the plaintiff constitutes unreasonable force. The Seventh and Ninth Circuits unequivocally hold that it can be unreasonable, depending upon the usual analysis. Jacobs v. City of Chicago, 215 F.3d 758, 773-74 (7th Cir. 2000);

14

Robinson v. Solano County, 278 F.3d 1007 (9th Cir. 2002).  See also McKenzie v. Lamb, 738 F.2d 1005 (9th Cir. 1984).  The Seventh Circuit, indeed, holds that pointing a gun at someone always constitutes "deadly force" since always there is implicit in such an act a threat to kill.  Jacobs, supra, at 774.  In the Third and Fifth Circuits, some panels hold that pointing a gun can in the right circumstances constitute unreasonable force, Black v. Stephens, 662 F.2d 181 (3d Cir. 1981); Petta v. Rivera, 143 F.3d 895 (5th Cir. 1998); while other panels hold that it never can, Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997); Hiojosa v. Terrell, 834 F.2d 1223 (5th Cir. 1988).  In the District of Massachusetts, it has been held that whether pointing a gun at a suspect, frisking him, or "keeping him in the frisk position for an extended period" constitutes unreasonable force or not is entirely dependent upon the particular facts of the case.  Sometimes it is perfectly reasonable; sometimes it violates the Fourth Amendment.  Nelson v. City of Cambridge, 101 F. Supp. 2d 44, 48 (D. Mass. 2000) (Gertner, J.).  "The display of weapons, and the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force.  Such a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time....Where a person has submitted to the officers' show of force without resistance, and where an officer has no reasonable cause to believe that person poses a danger to the officer or

15

to others, it may be excessive and unreasonable to continue to aim a loaded firearm directly at that person, in contrast to simply holding the weapon in a fashion ready for immediate use." Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1192-93 (10th Cir. 2001) (holding that pointing a gun at children in that case could be found to constitute unreasonable force).

The act of throwing plaintiff Elderkin to the ground is unconscionable under the facts of this case, and also amounts to unreasonable force. "[W]here there is no need for force, any force used is constitutionally unreasonable." Headwaters Forest Defense v. County of Humboldt, 240 F.3d 1185, 1199 (9th Cir. 2000). Transporting handcuffed prisoners without safety restraints in the metal-lined interior of a police van has been held actionable, Franklin v. City of Chicago, 102 F.R.D. 944 (N.D. Ill. 1984); and similarly in the back of a police cruiser where the arrestee was tossed around the back of the car during an unnecessarily rapid drive to headquarters. Kostrezewa v. City of Troy, 247 F.3d 633 (6th Cir. 2001). Transporting a wheelchair-bound arrestee in the back of a police van not equipped with restraints to hold the chair in place also violates the Americans with Disabilities Act and the Rehabilitation Act. Gorman v. Easley, 257 F.3d 738 (8th Cir. 2001). Handcuffing an arrestee more tightly than necessary is actionable. Martin v. Heideman, 106 F.3d 1308, 1312-13 (6th Cir. 1997); Walton v. City of Southfield, 995 F.2d 1331, 1342 (6th Cir. 1993); LaLonde v.

16

County of Riverside, 204 F.3d 947, 960 (9th Cir. 2000); Alexander v. County of Los Angeles, 64 F.3d 1315 (9th Cir. 1995); Palmer v. Sanderson, 9 F.3d 1433 (9th Cir. 1993); Hansen v. Black, 885 F.2d 642 (9th Cir. 1989); Bauer v. Norris, 713 F.2d 408, 410-13 (8th Cir. 1983).  Indeed, when the arrestee's wrists are too large for the cuffs, an officer uses unreasonable force when he puts those cuffs on the prisoner even if there are no other cuffs available, when the arrest is for a minor and non-violent offense and the arrestee has not resisted arrest.  Kost-rzewa v. City of Troy, 247 F.3d 633 (6th Cir. 2001).  One violent poke and push during a traffic stop is sufficient to establish a cause of action for unreasonable force.  Lanigan v. Village of East Hazel Crest, 110 F.3d 467 (7th Cir. 1997).  Holding a prisoner on the ground by placing a knee heavily on his back, if unnecessary and it causes injury, can be unreasonable.  LaLonde v. County of Riverside, 204 F.3d 947, 959 (9th Cir. 2000).

"As we have repeatedly said, whether the force used to effect an arrest is reasonable 'is ordinarily a question of fact for the jury.' Liston v. County of Riverside, 120 F.3d 965, 976 n. 10 (9th Cir. 1997)....Although excessive force cases can be decided as a matter of law, they rarely are because the Fourth Amendment test for reasonableness is inherently fact-specific....It is a test that escapes 'mechanical application' and 'requires careful attention to the facts and circumstances of each particular case,' Graham, 490 U.S. at 396, and thus

17

naturally favors jury resolution." Headwaters Forest Defense v. County of Humboldt, 240 F.3d 1185, 1198 (9th Cir. 2000), vacated on other grounds, 122 S. Ct. 24 (2001), reaffirmed, 276 F.3d 1125, 1130 (2002).

      The defendants attempt to distance themselves from the constitutional violations apparent in this case by implying that officers other than they actually perpetrated the most egregious wrongs.  This effort is unavailing, because the evidence shows that the defendants were present and fully capable of intervening to protect the plaintiffs; yet not only did not protect the plaintiffs, but actually participated in the wrongdoing.  Police officers, unlike civilians, have an affirmative duty to enforce the law.  That duty includes an obligation to prevent fellow officers from committing illegal actions.  An officer who is in a position to prevent another officer from violating the plaintiff's constitutional rights, but fails to do so, is jointly liable. Gagnon v. Ball, 696 F.2d 17 (2d Cir. 1982); O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988); Ricciuti v. New York City Transit Authority, 124 F.3d 123, 129 (2d Cir. 1997); McHenry v. Chadwick, 896 F.2d 184, 18f8 (6th Cir. 1990); Lanigan v. Village of East Hazel Crest, 110 F.3d 467, 477-78 (7th Cir. 1997); Yang v. Hardin, 37 F.3d 282 (7th Cir. 1994); Byrd v. Brishke, 466 F.2d 6 (7th Cir. 1972); Webb v. Hiykel, 713 F.2d 405 (8th Cir. 1983); Mick v. Brewer, 76 F.3d 1127 (10th Cir. 1996); Fundiler v. Cooper City, 777 F.2d 1436, 1441 (11th Cir. 1985); Jonelis v. Russo, 863 F. Supp. 84, 87 (D.

Conn. 1994).

The defendants also claim qualified immunity. The discussion above demonstrates why that affirmative defense is unavailable. "A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him is not prohibited by federal law...; or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct...; or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 36 (2nd Cir. 2003) (citations, quotation marks and ellipses omitted). Obviously, none of these three prongs applies here.

The defendants also claim that their conduct was insufficiently "extreme and outrageous" to support the plaintiffs' state law claim for intentional infliction of emotional distress. Without indulging in the usual regurgitation of the long litany of less horrendous facts found by other courts to warrant submitting such claims to a jury, the plaintiffs here can content themselves with the Second Circuit's holding in McKelvie v. Cooper, supra. The facts of that case were summarized above. The Second Circuit expressly held that those facts were sufficient to defeat a motion for summary judgment on the Connecticut state law claim of intentional infliction of emotional distress.

The motion for summary judgment must be denied.

Respectfully submitted:

_____
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203.562.9931
Fax: 203.776.9494
E-Mail: jrw@johnrwilliams.com
Attorney for the Plaintiffs

**CERTIFICATION OF SERVICE**

On the date above stated, a copy hereof was mailed to James N. Tallberg, Esq., Updike, Kelly & Spellacy, P.C., P.O. Box 231277, Hartford, CT 06123-1277.

_____
JOHN R. WILLIAMS