UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD J. ELDERKIN<br>and LUIS MAIA | :<br>:<br>: |
| VS. | :   NO. 3:02CV1474(MRK)<br>: |
| PATRICK BONA,<br>RICHARD GUISTI, SR.,<br>EDWARD C. DEMERS and<br>ROBERT DEVINE | :<br>:<br>:<br>:   MAY 1, 2004 |

### PLAINTIFFS' LOCAL RULE 56 STATEMENT

### I   RESPONSE TO DEFENDANTS' CLAIMS OF FACT

1. Agree.

2. Agree.

3. Agree.

4. Objection. Move to strike. This is a self-serving and conclusory statement, and not a recitation of any alleged facts.

5. Agree.

6. Agree.

7. Agree.

8. Agree.

9. Agree.

10. Agree.

11. Agree.

12. Agree.

12. (*sic*) Agree that both plaintiffs were arrested in an automobile being driven on a public roadway.  Plaintiffs have no way of knowing the identities of all participants, but the three defendants were among them.  (See Part II, *post.*)

13. Disagree.  Guisti was present throughout.  (*E.g.*, Elderkin deposition transcript, p. 49)

14. Disagree.  (Elderkin deposition transcript, pp. 49-50, 59, 81, 85-86; Maia deposition transcript, pp. 20-25)

15. Disagree.  (Maia deposition transcript, pp. 9-10, 15-21)

16. Agree that Elderkin was transported to the property.  That took place, however, while Maia still was being held prisoner.  (Ibid.)

17. Agree that the warrant was executed.  Whether Waterbury officers participated is unknown to the plaintiffs.  However, the defendants all did so participate.  (Elderkin deposition transcript, pp. 72-85)

18. Disagree.  (Maia deposition transcript, pp. 20-25)

19. Disagree.  He actively participated.  (Elderkin deposition transcript, pp. 81-85)

20. Disagree in part.  Elderkin was taken as a handcuffed prisoner, under defendant Bona's direct orders, to police headquarters where he was read his

*Miranda* rights and interrogated.  He gave a statement.  (Elderkin deposition transcript, pp. 85-88)

     21.  Agree.

     22.  Agree.

     23.  Agree.

     24.  Disagree.  (Elderkin deposition transcript, pp. 113-14)

     25.  Agree.

     26.  Agree.

     27.  Agree.

     28.  Agree.

     29.  Agree.

     30.  Agree.

     31.  Agree.

     32.  Agree.

     33.  Agree.

     34.  Disagree.  He was ordered to exit and complied, at gunpoint.  (Elderkin deposition transcript, pp. 45-48)

     35.  Agree.

     36.  Agree, but defendant Guisti was a high-ranking officer and was present at the time.  (Elderkin deposition transcript, p. 49)

     37.  Agree.

38. Agree.

39. Agree.

40. Agree.

41. Agree.

42. Agree.

43. Agree.

44. Disagree.  He was not "asked," he was ordered at gunpoint.  (Maia deposition transcript, pp. 9-10, 15-16)

45. Agree.

46. Agree.

47. Disagree.  (Maia deposition transcript, p. 16)

48. Disagree.  Maia was held prisoner at gunpoint while his car was searched.  Then he was ordered to go directly to his home and told that he would be arrested if he left the house.  (Maia deposition transcript, pp. 17-21)

49. Disagree.  They conducted a search of the car, which could be accomplished without opening the hatchback.  (Id. 17-19)

50. Agree he was not arrested.  Disagree with the claim that "he was allowed to leave...."  (Id. 17-21)

51. Agree.

52. Agree.

## II    PLAINTIFFS' STATEMENT OF MATERIAL FACTS

1. Defendant Devine stated to the other defendants that the plaintiff Elderkin had shown him a box of live pineapple type grenades in the plaintiff's basement. That was a false statement. (Plaintiff Elderkin's deposition transcript, pp. 16-17)

2. There never were any live grenades in the basement of plaintiff Elderkin. (Id. 17) He never has possessed live grenades. (Id. 40)

3. Plaintiff Elderkin has special permits from ATF for possession of Class 3 weapons, that is, fully automatic weapons. (Id. 19)

4. Plaintiff Elderkin also has an ATF permit for possession of silenced weapons. (Id. 20-21)

5. Plaintiff Elderkin owns rental property on Straits Turnpike, in Middlebury. (Id. 44-45)

6. On September 22, 1999, the plaintiff Elderkin had gone to the Big E with friends. Upon returning around sunset, he met with plaintiff Maia and the two of them went to the Straits Turnpike property. (Id. 43-44)

7. The plaintiffs drove away from the Straits Turnpike property heading back to the plaintiff Elderkin's residence. They were pulled over by the defendants, with police lights flashing, on a public road. The defendants were screaming at them: "Hands on dash, hands on dash!" (Id. 45)

8. The plaintiffs, sitting in the automobile, were approached by someone

in full body armor holding an M-16 rifle with a laser beam on it pointing at the head of plaintiff Elderkin from a distance of only 2 or 3 feet. (Id. 46)

9. The police, in Middlebury police vehicles, blocked in the plaintiffs' vehicle. (Ibid.)

10. The plaintiffs were removed from the vehicle at gunpoint. (Id. 47)

11. Someone hollered: "Kneel!" When plaintiff Elderkin attempted to turn to see who was thus shouting at him, he felt someone pulling his arms and pushing and twisting him and slamming him to the ground. He was pushed to the ground and hit his knee. The police just dragged him and pushed him and shoved him to the ground. (Id. 48)

12. Defendant Guisti was present and was the only officer present not wearing a SWAT-type uniform. (Id. 49)

13. Defendant Demers transported plaintiff Elderkin in custody from the scene of this arrest to his house. (Id. 50)

14. When he was ordered at gunpoint to kneel, plaintiff Elderkin thought he was going to be executed. (Id. 51)

15. The officers pulled and shoved plaintiff Elderkin and stepped on him. (Id. 52-53)

16. They slammed him to the ground. (Id. 56)

17. When he was on the ground, plaintiff Elderkin was handcuffed. (Ibid.)

18. Guisti stated to plaintiff Elderkin that he had a search warrant for the

basement of his house.  (Id. 59)

19.  The location where the plaintiff Elderkin was stopped and arrested was approximately 1.5 miles away from the Straits Turnpike property for which the search warrant had been issued.  (Id. 70)

20.  Plaintiff Elderkin was driven back to the Straits Turnpike property. Defendant Bona was waiting there along with many other police officers.  (Id. 72)

21.  The search of the Straits Turnpike property lasted approximately three hours.  (Id. 81)

22.  Throughout that search, the plaintiff Elderkin was held prisoner and periodically interrogated by defendant Bona, who was shouting and jumping up and down and flailing his arms and screaming and demanding answers to his questions.  (Ibid.)

23.  Before the search had ended, defendant Bona ordered the plaintiff to be taken in custody to police headquarters for further interrogation.  (Id. 85)

24.  Defendant Bona was angry at the plaintiff because the plaintiff had nothing illegal in his house.  Defendant Bona hollered at the plaintiff: "We spent all this time and money and you have nothing!"  (Id. 86)

25.  The handcuffs were not removed from the plaintiff until after he was inside police headquarters.  (Id. 87)

26.  The plaintiff was in handcuffs continuously for approximately 2.5 hours.  (Id. 88)

27. The defendants did not seize anything from the property of plaintiff Elderkin because he had nothing illegal. (Id. 91)

28. Plaintiff Elderkin was not charged with any crime. (Id. 93)

29. Plaintiff Elderkin was so terrified and confused throughout these events that he was afraid he might soil himself. (Id. 111)

30. The police inflicted serious damage on the property of plaintiff Elderkin during their search of his basement. Things were tipped over and thrown around. A container of bolts and nuts, and trays of similar items, were thrown around. A big aluminum box had been put on top of his BSA bicycle. The defendants had thrown and dumped property all over. (Id. 113-14)

31. The plaintiff Elderkin's chief physical complaint after the arrest and search was that he was so upset that his stomach and nerves were bad. He sought medical treatment. In the process, he also explained to his physician that he had incurred an injury to his knee when he was thrown to the ground, and he has been treated for that as well. (Id. 126)

32. As a result of the actions of the defendants, the plaintiff Elderkin was so upset that he could not sleep. (Id. 135)

33. The plaintiff Elderkin suffers nightmares as a result of the actions of the defendants, and sometimes wakes up screaming. (Id. 136)

34. Plaintiff Maia observed two different police officers stepping on plaintiff Elderkin's back while he was held prisoner on the ground outside Maia's

vehicle. (Maia deposition transcript, p. 5)

35. Plaintiff Maia was driving down the road when the police cars with flashing lights pulled him over. The officers shouted at him to put his hands on the dashboard. (Id. 9)

36. One of the officers stood a couple of feet away from the car pointing a gun at plaintiff Maia. (Id. 10, 15-16)

37. Plaintiff Maia was ordered out of his car at gunpoint and ordered to put his hands on top of his car while his person was searched. (Id. 16)

38. The police searched Maia's car while holding him prisoner. (Id. 17-19)

39. The search included the car's glove compartment. The police even opened and searched the interior of a flashlight found inside the glove compartment. (Id. 19)

40. The police left the interior of plaintiff Maia's car in disarray. They did not put away any of the property they disrupted during the search. (Ibid.)

41. The Middlebury police then ordered plaintiff Maia to go straight to his house and told him that if he was seen anywhere around the town he would be arrested. (Id. 20-21)

42. Two of the police who pushed plaintiff Elderkin to the ground were wearing Middlebury police uniforms. (Id. 22-23)

43. Defendant Bona was present at the scene where plaintiff Maia's car

was stopped and both plaintiffs were searched. (Id. 23-25)

      44. Plaintiff Maia also suffered emotional distress, including loss of sleep, as a result of the defendants' actions. (Id. 26, 29-30)

                                THE PLAINTIFFS

                                BY:_____
                                    JOHN R. WILLIAMS (ct00215)
                                    51 Elm Street
                                    New Haven, CT 06510
                                    203.562.9931
                                    Fax: 203.776.9494
                                    E-Mail: jrw@johnrwilliams.com
                                    Their Attorney

**CERTIFICATION OF SERVICE**

On the date above stated, a copy hereof was mailed to James N. Tallberg, Esq., Updike, Kelly & Spellacy, P.C., P.O. Box 231277, Hartford, CT 06123-1277.

                                    _____
                                    JOHN R. WILLIAMS