UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD J. ELDERKIN<br>and LUIS MAIA | : <br> : <br> : | |
| VS. | : <br> : | NO. 3:02CV1474(MRK) |
| PATRICK BONA,<br>RICHARD GUISTI, SR.,<br>EDWARD C. DEMERS and<br>ROBERT DEVINE | : <br> : <br> : <br> : | <br><br><br>JULY 23, 2004 |

**JOINT TRIAL MEMORANDUM**

**(1)   TRIAL COUNSEL**

<u>For the Plaintiffs:</u>

John R. Williams
Norman A. Pattis
Joseph M. Merly
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510
203.562.9931
Fax: 203.776.9494
E-Mail:

<u>For the Defendants:</u>

James N. Tallberg
Updike, Kelly & Spellacy, P.C.
P. O. Box 231277

369329        1

369329

>Hartford, CT 06123-1277
>860.548.2600
>Fax: 860.548.2680
>E-Mail: jtallberg@uks.com

**(2)    JURISDICTION**

The basis for the court's subject matter jurisdiction is Sections 1331, 1343(3) and 1367(a) of Title 28 and Sections 1983 and 1988 of Title 42 of the United States Code.

**(3)    JURY-NONJURY**

>This is a jury case.

**(4)    NATURE OF CASE**

>The defendants had a search warrant authorizing them to search the residence of the plaintiff Richard Elderkin for hand grenades, hand grenade facsimiles, explosives, and military explosives. They had no other warrant. Immediately prior to the execution of the warrant, the plaintiffs were stopped while driving an automobile in the vicinity of the residence by a police task force assisting with the execution of the warrant. The plaintiffs contend they were subjected to unreasonable warrant-less search and seizure in violation of the Fourth Amendment. The defendants deny liability and assert the affirmative defense of qualified immunity.

**(5)    STIPULATIONS OF FACT AND LAW**

>None

**(6)    PLAINTIFFS  CONTENTIONS**

>On the late afternoon or early evening of September 21, 1999, the defendant Devine, who has elected not to appear and defend this action, falsely and maliciously stated to one or more officers of the Middlebury police department that

2

369329

he personally had seen a wooden box filled with corroded live hand grenades in the basement of the plaintiff Elderkin. In fact, there were no such items anywhere on the plaintiff Elderkin s property and the defendant Devine never saw any such thing. As a result of the actions of defendant Devine described in Paragraph 7, the defendants Guisti and Demers obtained from a Judge of the Connecticut Superior Court a warrant authorizing them to search residential property owned by the plaintiff at 1050 Straits Turnpike in Middlebury and to seize therefrom "Hand grenades, hand grenade facsimiles, explosives, and military explosives."

Shortly after 6:00 p.m. on September 22, 1999, the plaintiffs were driving in the automobile of the plaintiff Luis Maia in Middlebury. Without warning, they were pulled over by a large group of armed police officers, including the defendants Bono, Guisti and Demers. The officers pointed their loaded firearms at the plaintiffs, threatened to kill them, forced them to exit the vehicle with their hands extended and threw them to the ground. They were ordered, still at gunpoint, to put their hands behind them and were handcuffed. The defendants Bono, Guisti and Demers participated in these actions. The officers, including the defendants Bono, Guisti and Demers, tore apart the vehicle of the plaintiff Maia, unnecessarily and unreasonably damaging Mr. Maia s personal property and inflicting economic loss upon him. Finding nothing, the defendants Bono, Guisti and Demers, and the other officers, released the plaintiff Maia from custody and ordered him to leave the area. He complied with that order against his will. The defendants Bono, Guisti and Demers, and the other officers, then took the plaintiff Elderkin in custody to his aforesaid property at 1050 Straits Turnpike in Middlebury, where they forced him to admit

3

them and where they thereupon conducted a thorough and destructive search of the premises  finding nothing. In the course of their said search, they inflicted destruction and damage unnecessarily upon the property of the plaintiff Elderkin, which they failed thereafter to repair, and thereby caused him economic loss. When it became clear to the defendants Bono, Guisti and Demers that the plaintiff Elderkin had not broken any laws and did not possess any hand grenades, they berated him for having inconvenienced them and then transported him, still in handcuffs, in a police cruiser to the headquarters of the Middlebury police department where they subjected him to interrogation before releasing him from custody. The defendants never had any warrant to arrest either plaintiff. They had no warrant to search the person of either plaintiff and they had no warrant to search the plaintiff Maia s vehicle. As a direct and proximate result of the actions of the defendants and each of them described above, both plaintiffs suffered physical pain and injury, loss of liberty, damage to their personal property, economic loss and severe emotional distress; and plaintiff Elderkin required medical care and treatment as a result.

**(7)    DEFENDANTS  CONTENTIONS**

On September 22, 1999, Lt. Richard Guisti, Sr. and Officer Edward Demers signed an Affidavit and Application for Search and Seizure Warrant (the  Warrant ) concerning a yellow ranch style home located at the corner of Umberfield Road and Route 63 in Middlebury, Connecticut, owned by Richard Elderkin (the  Property ). The Warrant was prompted by information received by the Middlebury Police Department on or about September 20, 1999, from another law enforcement agency, that Mr. Elderkin possessed a case of live pineapple style grenades at the

Property. This information was based upon a complaint made by Robert Devine. Mr. Elderkin was also believed to possess thousands of rounds of military ammunition, and it had been suggested to the police that the Property was booby trapped.

On September 22, 1999, at approximately 6:00 p.m., Mr. Elderkin was stopped on the street by members of a task force consisting primarily of Waterbury Police Officers, who were assisting with the execution of the Warrant. Mr. Maia was driving the automobile. Mr. Maia was not arrested and was allowed to drive from the scene in a matter of minutes. Mr. Elderkin was transported to the Property.

Following the search, Mr. Elderkin, having been notified of his rights, made a voluntary statement to the police. After signing his statement he was allowed to leave. He was not charged with a crime. The defendants deny that they violated the plaintiff s rights in any way.

**(8)   LEGAL ISSUES**

1.  Whether stopping and detaining an individual in handcuffs, approximately one (1) mile from the location of a search warrant operation, immediately prior to and throughout the execution of a three (3) hour search of the location in which police believe illegal explosives and other military style hardware is being kept, constitutes an unlawful search and seizure under the Fourth Amendment.

2.  Whether police officers who stopped and detained an individual in handcuffs,  approximately one (1) mile from the location of a search warrant operation, immediately prior to and throughout the execution of a three (3) hour

5

369329

search of the location in which police believe illegal explosives and other military style hardware is being kept, are entitled to the defense of qualified immunity.

**(9)  VOIR DIRE QUESTIONS**
Submitted separately.

**(10)  LIST OF WITNESSES**

<u>**For the Plaintiff:**</u>

1.  Plaintiff Richard Elderkin will testify concerning his seizure on a road in Middlebury on September 22, 1999, his detention for several hours by the police outside his house and later at the police department, and his damages. (2 hours)

2. Plaintiff Luis Maia will testify about the stop of his automobile in which Richard Elderkin was a passenger, the actions of the police officers making the stop, his observations concerning their interaction with Richard Elderkin, and his own damages. (.5 hours)

3. The defendants will testify about their actions concerning the planning for the stop, the stop itself, and transport and detention of Richard Elderkin. (2.5 hours)

4.  Helen Hart-Gai, A. P. R. N., Veteran's Hospital, West Haven, will testify concerning her diagnosis and treatment of the plaintiff for post-traumatic stress disorder. (.5 hours)

5.  Dr. Deborah Casey (Associated Physicians of Southbury) will testify concerning her recommendation that Richard Elderkin get counseling for his anxiety due to the incident.  (.5. hours)

6

369329

6. Thomas Mancuso, Naugatuck, will testify that the defendants never contacted him concerning his knowledge of Richard Elderkin's property, although he accompanied Robert Devine during the visit when Devine claimed he saw grenades at Elderkin's property, that Devine never looked in a box, that Devine never saw any explosives.  (.5 hours)

7.   Sgt. R. Wildman will testify that although Robert Devine referred to two other individuals who had knowledge of the contents of Richard Elderkin's collection, that Wildman made no effort to learn the identity of either individual. (.5 hours)

8.   Officer Prunchnicki will testify that he took a statement from Robert Devine in which Devine referred to a second individual who was with him at the time he observed hand grenades in Richard Elderkin's basement, but that he made no effort to learn the identity of this person. (.5 hours)

9.   Detective Calhoun will testify that he made no effort to corroborate the statements made by Robert Devine. (.5 hours)

10.   Donna Newman, a friend, will testify concerning Richard Elderkin's emotional distress. (.5 hours)

11.   Dr. Michael Baumgartner, Yale Orthopedic Clinic, will testify concerning his examination of the plaintiff's knee.

12.   John Scorpin, a counselor in Waterbury, will testify concerning his meetings with the plaintiff to address his anxiety.  (.5 hours)

13.   Robert Devine, Middlebury, will testify about his knowledge of Richard Elderkin, the contents of his basement during the summer of 1999,

7

and his sworn statement to members of the Middlebury Police Department.

**<u>For the Defendant:</u>**

1. Defendant Patrick Bona will testify about his actions and observations throughout the events in question. His testimony should not exceed one to two hours.

2. Defendant Richard Guisti, Sr. will testify about his actions and observations throughout the events in question. His testimony should not exceed one to two hours.

3. Defendant Edward C. Demers will testify about his actions and observations throughout the events in question. His testimony should not exceed one to two hours.

4. Middlebury Sergeant Richard Wiladman will testify about his actions and observations throughout the events in question. His testimony should not exceed one to two hours.

5. Middlebury Officer Prunchnicki may testify, if needed, about his actions and observation throughout the events in question. If needed, his testimony should not exceed one hour.

6. Defendant Robert Devine may testify, if needed, about his actions and observation throughout the events in question. If needed, his testimony should not exceed one hour.

7. Naugatuck Police Detective Calhoun may testify, if needed, about his actions and observations throughout the events in question. If needed, his testimony should not exceed one half hour.

8. Naugatuck Lt. Jerry Scully may testify, if needed, about his actions and observations throughout the events in question. If needed, his testimony should not exceed one half hour.

369329

9. Waterbury Police Captain Mike Bruce is expected to testify about his actions and observations throughout the events in question. His testimony should not exceed one hour.

10. Waterbury Police Officer Tony Quicquaro is expected to testify about his actions and observations throughout the events in question. His testimony should not exceed one hour.

11. Waterbury Police Officer Gene Carron is expected to testify about his actions and observations throughout the events in question. His testimony should not exceed one hour.

12. Waterbury Police Officer John Carron may testify, if needed, about his actions and observations throughout the events in question. His testimony should not exceed one hour.

13. Waterbury Police Officer Steve Flaherty, Jr. may to testify, if needed, about his actions and observations throughout the events in question. His testimony should not exceed one hour.

14. Waterbury Police Lt. Cosgrove may testify, if needed, about his actions and observations throughout the events in question. His testimony should not exceed one hour.

15. Waterbury Police Officer Jeff Lowery may testify, if needed, about his actions and observations throughout the events in question. His testimony should not exceed one hour.

16. Members of the State Police Bomb Squad, Tigh Wade, David Bland, Charlie Shaw, and others whose identities are not yet known, may testify, if needed, about their actions and observations throughout the events in question. Their testimony should not exceed two hours.

369329

**(11)  EXHIBITS**

**For the Plaintiff:**

1. Search Warrant for Plaintiff's property, 9/22/99.

2. Plaintiff's statement to Middlebury Police Department, 9/22/99.

3. Statement of Robert Devine to Middlebury Police, 9/21/99.

3. Medical Records and EOBs, Dr. Solomon Aordkian,

4. Medical Records and EOBs, Dr. Michael Baumgartner, Yale Orthopedic Clinic.

5. Yale New Haven Hospital, Diagnostic X-Ray Report, 5/1/2002 and EOB.

6. Medical Report, Dr. Antonio Wong, 9/17/01.

7. Southbury HealthCare Center, Medical Excuse Slip, Dr. Wong, 9/23/99.

8. Diagnostic Imaging of Southbury, MRI report, Dr. Ajemian, 10/09/01.

9. Photographs of plaintiff's basement after search on 9/22/99. Plaintiff's medical reports from the Veteran's Hospital.

10. Audiotape of Giusti, 10/04/01concerning his recollectionof the incident.

**For the Defendant:**

1. Warrant to search the Property issued 9/22/99, incident # 99-7969.

2. Written Statement of Robert Devine, dated 9/21/99, incident #99-7969.

3. Middlebury Police Department Incident Report No. 99-7969.

4. Notice of Rights signed by Mr. Elderkin.

5. NCIC Printout of 9/21/99 and 9/22/99.

6. Map or Diagram showing the geography in question.

10

369329

      7.      Transcripts of audio recordings made by Richard Elderkin on September 24, 2000, October 15, 2000, and October 4, 2001.

      8.      Written statements prepared by the plaintiffs.

**(12)  DEPOSITION TESTIMONY**

None.

**(13)  REQUESTS FOR JURY INSTRUCTIONS**

Submitted separately.

**(14)  ANTICIPATED EVIDENTIARY PROBLEMS**

Plaintiffs anticipate none, other than to contest any motions in limine presented by the defendants based upon the items set forth below.

Defendants object to the introduction of any evidence, or reference to, (1) claims of excessive force or alleged physical injuries caused by excessive force; (2) claims of improper or unlawful search of the plaintiff s basement on Umberfield Road; (3) medical records, including records of any undisclosed experts (4) photographs of the plaintiff s basement; (5) any testimony or evidence regarding undisclosed experts, in particular, the testimony of Helen Hart; and (6) any testimony or evidence regarding the plaintiffs  alleged emotional distress, which claims were dismissed on summary judgment.

**(15)  PROPOSED FINDINGS AND CONCLUSIONS**

Not applicable.

**(16)  TRIAL TIME**

Three days.

**(17)  FURTHER PROCEEDINGS**

None.

**(18)  ELECTION FOR TRIAL BY MAGISTRATE**

Not applicable.

369329

RESPECTFULLY SUBMITTED,
THE PLAINTIFFS
RICHARD J. ELDERKIN and LUIS MAIA


BY:_____
KATRENA ENGSTROM
Fed. Bar No. Ct09444
Williams and Pattis, LLP
51 Elm Street
New Haven, CT 06510
203/562-9931
FAX: 203/776-9494
E-Mail: kengstrom@johnrwilliams.com

12

369329

THE DEFENDANTS
PATRICK BONA, RICHARD GUISTI, SR.,
and EDWARD C. DEMERS


BY:_____
JAMES N. TALLBERG (ct17849)
Updike, Kelly & Spellacy, P.C.
P. O. Box 231277
Hartford, CT 06123-1277
860.548.2600
FAX: 860.548.2680
E-Mail: jtallberg@uks.com

13

369329